IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM DECATURE DAVIS, Jr.,<br><br>Defendant. | Cause No. CR-13-28-GF-DLC<br><br>**FINDINGS AND RECOMMENDATION TO DENY MOTION TO SUPPRESS AND BILL OF PARTICULARS** |

## I. Synopsis

Mr. Davis is charged with Aggravated Sexual Abuse and Abusive Sexual Contact. At a polygraph examination with FBI agents in January 2013, Mr. Davis confessed to touching a child inappropriately. He seeks suppression of that confession, which he contends was involuntary. That motion should be denied. The United States has shown that the confession was voluntary and constitutionally obtained.

1

Mr. Davis also moves for an Order requiring the United States to provide a Bill of Particulars, stating more specifically when the wrongful conduct is alleged to have occurred. That motion should also be denied, as the United States has provided full discovery as to the timing of the alleged event.

## II. Status

Mr. Davis moves for suppression of his confession, which he argues was obtained in violation of the Fourth, Fifth, and Sixth Amendments. CD 25. The government opposes the motion, arguing that Mr. Davis's confession was voluntary. CD 31.

Mr. Davis also seeks a "bill of particulars" from the government, setting out more specifically his alleged wrongdoing. CD 27. Mr. Davis argues that he is unfairly prejudiced by the 12-month time frame in the indictment, since he cannot provide an alibi for the entire year or otherwise prepare a defense. The government opposes the motion. CD 30.

The Hon. Dana L. Christensen, United States District Judge, referred to case to the undersigned to conduct a hearing and submit findings and recommendations in regard to those motions. CD 34. The hearing was held in Great Fall, Montana, on May 6, 2013.

### III. Standards

**Burden of proof**

At a suppression hearing, the government has the burden to prove, by a preponderance of the evidence, that a confession was voluntary. Lego v. Twomey, 404 U.S. 477, 489 (1972).

**Fourth Amendment**

Application of the Fourth Amendment depends on whether the person invoking its protection can claim a reasonable expectation of privacy that has been invaded by government action. Smith v. Maryland, 442 U.S. 735, 739-40 (1979). This inquiry embraces two questions. The first is whether the individual has demonstrated a subjective expectation of privacy. Id. The second is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable. Id. "Reasonableness" is not capable of a precise definition, but must balance the need for the search against the invasion it entails. Bell v. Wolfish, 441 U.S. 520, 559 (1979).

**Fifth Amendment**

The Fifth Amendment of the United States Constitution provides the right to remain silent, and to refrain from incriminating one's self. Miranda v. Arizona, 384 U.S. 436, 444. A defendant can waive that right, provided the waiver is

voluntarily, knowingly, and intelligently made. <u>Id</u>. Whether a defendant's will was overborne by law enforcement, so as to make a confession involuntary, depends on the totality of the circumstances. <u>United States v. Haswood</u>, 350 F.3d 1024, 1027 (9th Cir. 2003). Courts consider: the age and intelligence of the defendant, whether the defendant was informed of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of any physical punishment. <u>Id</u>.

**Sixth Amendment**

The Sixth Amendment right to counsel generally attaches at the commencement of adversarial proceedings against the defendant. <u>United States v. Hines</u>, 963 F.2d 255, 256 (9th Cir. 1992). Typically, a defendant's arraignment marks the beginning of adversarial proceedings. <u>Id</u>.

**Bill of Particulars**

When a defendant seeks a bill of particulars, the court must consider whether the indictment and other disclosures adequately advise the defendant of the charges against him. <u>U.S. v. Grace</u>, 401 F. Supp. 2d 1103, 1106 (D. Mont. 2005) (citing <u>United States v. Long</u>, 706 F.2d 1044, 1054 (9th Cir.1983)). If the government provides full discovery there is no need for a bill of particulars. <u>Id</u>.

## IV. Facts

The government alleges Mr. Davis molested a girl sometime in 2007. The alleged victim ("J.S.") was about six years old at the time. She disclosed the alleged molestation in 2012, when she was 11. After J.S. disclosed the alleged molestation, FBI investigators met with Mr. Davis. He denied inappropriate contact with J.S. The investigators asked him to take a polygraph examination. He agreed, and the exam was scheduled for two days later, on January 9, 2013, at the FBI office in Havre. Mr. Davis had a friend drive him to the scheduled examination.

FBI agent Stacy Smiedala met with Mr. Davis. The two of them sat in an interview room, with the door closed and no one else present. Agent Smiedala reviewed two forms with Mr. Davis. The first was an "Advice of Rights" form reviewing Mr. Davis's <u>Miranda</u> rights. The second was a polygraph consent form, indicating that the polygraph was optional. Mr. Davis electronically signed both forms.

Agent Smiedala commenced a pre-polygraph interview. No monitoring devices were attached to Mr. Davis's body. The interview was not recorded. At the suppression hearing, both Mr. Davis and Agent Smiedala testified about the interview. They gave starkly contrasting accounts.

5

According to Mr. Davis, Agent Smiedala told him there was proof that Mr. Davis had already lied to the FBI three times, and could spend 20 years in prison for each lie. Agent Smiedala said Mr. Davis was facing legal problems in the realm of murder or armed robbery. But Agent Smiedala said he could bring Mr. Davis's legal problems down to the realm of shoplifting or another misdemeanor, and that only tribal charges would be filed, if Mr. Davis cooperated – which Mr. Davis understood to mean confessing. Mr. Davis testified that he requested an attorney twice during the interview, but his requests were ignored or discouraged, and no attorney was provided.

According to Agent Smiedala, he never made or implied any promises regarding how Mr. Davis would be charged or sentenced. The interview was calm and civil, and Mr. Davis was free to leave at any time. Agent Smiedala testified that Mr. Davis never requested an attorney.

The parties agree that in the course of the interview, Mr. Davis confessed to Agent Smiedala that he had placed his hand in J.S.'s pants and touched her vagina for about 10 seconds on the porch of his aunt's home. Mr. Davis confessed again with another agent present, and a third time in an audio recording. CD 26, p. 3. In the audio recording, Mr. Davis states that his confession is voluntarily, that he was treated fairly in the interview, and that he was not promised anything in exchange

for his confession. Because Mr. Davis confessed, the polygraph examination was never administered.

## V. Analysis

**Fourth Amendment**

Mr. Davis argues the a polygraph exam is a "search" within the meaning of the Fourth Amendment, as it detects and records personal physiological data not readily observable. CD 26, pp. 4-7. Mr. Davis contends that his polygraph exam ran afoul of the Fourth Amendment because it was conducted without a warrant and without Mr. Davis's informed, voluntary consent. Mr. Davis argues that his consent to take the polygraph was based on duplicity, and therefore not informed and voluntary. Because Mr. Davis's confession was derived from the polygraph, it is "fruit of the poisonous tree" and should be excluded, he argues.

The government argues that a polygraph exam is not a "search" for purposes of the Fourth Amendment. The government contends that the only published opinion to consider this question held that polygraphs are not searches (citing Stehney v. Perry, 907 F.Supp. 806, 822-23 (D.N.J. 1995) aff'd, 101 F.3d 925 (3d Cir. 1996)). The government argues that even if the polygraph was a search, it did not violate the Fourth Amendment because Mr. Davis consented to the polygraph several times, including in writing and on the recorded audio confession.

The recent District of Montana case <u>Unites States v. Alvarez</u>, CR-12-96, considered legal issues and facts almost identical to those presented here. <u>Alvarez</u> held in the clearest terms that "A polygraph examination is not a Fourth Amendment search." (citing <u>Stehney</u>, along with unpublished opinions from courts in the Ninth Circuit). <u>Alvarez</u> also stated that even if the polygraph was a search, there was no constitutional violation because the defendant consented.

In light of <u>Alvarez</u>, Mr. Davis's argument that a polygraph is a search fails. Therefore Mr. Davis's Fourth Amendment rights were not implicated. However, testimony at the suppression hearing made clear that Mr. Davis did not event take a polygraph examination, but only participated in an interview in anticipation of the exam.[1] Even if a polygraph were a Fourth Amendment search and even if Mr. Davis had taken one, his consent would obviate a constitutional violation. See <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218 (1973)(warrant-less search does not violate rights if conducted with consent).

**Fifth Amendment**

Mr. Davis argues his confession should be excluded under the Fifth Amendment because it was involuntary. He argues that he was overborne by a

---

[1] Mr. Davis's position appears to be that the interview was part of a "polygraph process," of which the monitored, lie-detecting test is only one component.

"sophisticated, and at times repetitive" polygraph examination designed to elicit a confession, rather than merely to determine whether Mr. Davis was truthfully answering the questions. The examination process carefully and subtly manipulated Mr. Davis into confessing, he argues. The confession therefore was not voluntary and should be suppressed, according to Mr. Davis. CD 26, pp. 13-14.

The government argues that Mr. Davis waived his Miranda rights voluntarily, knowingly, and intelligently. The government points to his written acknowledgment and his recorded statement after the interview confirming that his waiver was voluntary. The government argues that Mr. Davis has the burden to show that his consent was coerced, and did not do so. The entire process was only about an hour and 15 minutes, Mr. Davis was advised of his rights, and Mr. Davis has not alleged any specific instances of coercive conduct, according to the government. Nor was the relatively brief questioning before and after the polygraph coercive, since it was foreseeable and voluntary, the government argues. (Citing Haswood, 350 F.3d at 1028).

In Alvarez, the defendant's confession was deemed voluntary because the defendant agreed to go to the FBI office and drove himself there, was not confined during the exam, confirmed verbally and in writing that his statements were

voluntary, signed forms informing him of his rights, and was an adult with no indication of low intelligence.

The same factors exist here. Mr. Davis agreed to the exam, had a friend drive him to it, signed waivers, and acknowledged on a recording that his confession was voluntary. He is an adult who graduated high school and attended some college. He testified that he was not physically restrained or punished. The entire process was half as long as the questioning in <u>Alvarez</u>. Under the totality of the circumstances, the confession was clearly voluntary.

**Sixth Amendment**

Mr. Davis argues that he had a right to counsel during the polygraph process. He contends that the polygraph process is "involved and complicated," and designed to achieve a desired result. Mr. Davis argues that the polygraph process should be recognized as a "critical stage" of a criminal proceeding, in which a defendant has a right to counsel.

Mr. Davis further argues that he did not validly waive his right to an attorney during the meeting with FBI agents. He contends that he was induced to agree to the polygraph test by the FBI agents, who suggested it was an opportunity for him to avoid criminal charges. And he argues that he did not waive his right to counsel during the interview portion before and after the exam at all.

10

The government argues that the meeting with the FBI did not trigger a Sixth Amendment right to counsel, since it occurred before the initiation of judicial proceedings. (Citing Rothgery v. Gillespie County, 544 U.S. 191, 194 (2008). Mr. Davis had not been arrested and was not even in custody, according to the government.

Alvarez held that the polygraph examination was not a critical stage of the proceedings. Therefore the defendant's Sixth Amendment right to counsel had not attached. The same analysis applies here. Additionally, Mr. Davis specifically waived his right to counsel in writing.

**Rule of completeness**

Mr. Davis argues that if the confession is not suppressed, polygraph results and the circumstances of the confession should be admitted under the rule of completeness. The undersigned did not contemplate this argument, as it seems best reserved for the presiding judge.

**Bill of particulars**

Mr. Davis seeks an order requiring the government to provide a "Bill of Particulars." CD 27. Federal Rule of Criminal Procedure 7(f) provides:

> The court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits.

11

A bill of particulars is a more specific explanation of the charged conduct than the indictment. U.S. v. Trumpower, 546 F. Supp. 2d 849, 851 (E.D. Cal. 2008). It has three functions:

(1) to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial;

(2) to avoid or minimize the danger of surprise at the time of trial; and

(3) to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite for such purposes. Id.

Mr. Davis argues that he is unable to adequately prepare for trial without being informed when in 2007 he is accused the crime. Mr. Davis also states that he cannot respond to the government's request for a Notice of Alibi because he cannot possibly account for his whereabouts for an entire 12-month period. CD 27, p. 2.

The government argues that a bill of particulars is not necessary because the indictment gives him adequate notice of the conduct for which he is being charged, and the government has provided Mr. Davis with full discovery. CD 30, p. 5. The government also argues that they have narrowed the time frame through discovery to late summer of 2007, which is the best they can do considering the witness was six years old at the time.

Here, the government has provided a time frame of "late summer" 2007. The government represented at the hearing that it had provided all the information

it had regarding the alleged incident in discovery, and could narrow the range no further. Considering the victim's young age at the time of the alleged conduct and the intervening years, the roughly two-month time frame encompassed by the term "late summer" is a reasonable. Regardless, the government has provided full discovery, so a bill of particulars would provide the defendant no help in establishing a time frame. The motion should be denied. U.S. v. Grace, 401 F. Supp. 2d 1103, 1106.

The Court FINDS:

1. Mr. Davis was not subjected to a "search" withing the meaning of the Fourth Amendment.

2. Mr. Davis's confession to FBI agents on January 9, 2013, regarding sexual contact with a minor was voluntary.

3. Adversarial proceedings had not commenced against Mr. Davis when he was interviewed by FBI agents on January 9, 2013.

4. The United States has provided full discovery to Mr. Davis regarding the time frame of the alleged conduct for which he is charged.

The Court RECOMMENDS:

1. Mr. Davis's Motion to Suppress Statements, CD 25, should be DENIED.

2. Mr. Davis Motion for Bill of Particulars, CD 27, should be DENIED.

# NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may serve and file written objections to the Findings and Recommendations within 14 days of their entry, as indicated on the Notice of Electronic Filing. 28 U.S.C. § 636(b)(1). A district judge will make a de novo determination regarding any portion of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge, and may waive the right to appear and allocute before a district judge.

Dated the 8th day of May, 2013.

Keith Strong
United States Magistrate Judge